# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **Allen Pyron, Robert A. Kunshier, and Alvin Lamm,** | Civil No. 10-3759 (PJS/JJG) |
| **Plaintiffs,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Cal Ludeman, Commissioner of Department of Human Services; Dennis Benson, Chief Executive Officer of Minnesota Sex Offender Program-MSOP; Daniel Storkamp, MSOP Deputy Director; Gregg Carlson, MSOP Director; Kevin Moser, MSOP-Assistant Director; Raymond Ruotsalainen, Information Technology Spec 1; Steven Lindeen, Information Technology Spec 1; and Mehrada Shabestari, MSOP-IT Supervisor,** | |
| **Defendants.** | |
| **Shannon D. Hollie,** | Civil No. 10-4236 (PJS/JJG) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Cal Ludeman, Commissioner of Department of Human Services; Dennis Benson, Chief Executive Officer of Minnesota Sex Offender Program-MSOP; Daniel Storkamp, MSOP Deputy Director; Gregg Carlson, MSOP Director; Kevin Moser, MSOP-Assistant Director; Raymond Ruotsalainen, Information Technology Spec 1; Steven Lindeen, Information Technology Spec 1;** | |

**and Mehrada Shabestari, MSOP-IT Supervisor,**

                      **Defendants.**

JEANNE J. GRAHAM, United States Magistrate Judge

Plaintiffs Allen Pyron, Robert A. Kunshier, Alvin Lamm, and Shannon D. Hollie are civilly committed detainees in the Minnesota Sex Offender Program (MSOP). They brought these two actions pursuant to 42 U.S.C. § 1983 against numerous MSOP officials for allegedly violating their First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Plaintiffs Pyron, Kunshier, and Lamm commenced suit as Plaintiffs in Civil No. 10-3759; Hollie is the sole Plaintiff in Civil No. 10-4236. The two cases have been designated as related cases, and the Complaints are virtually identical.

Essentially, Plaintiffs allege that the Defendant officials unlawfully limited the amount of personal property they may possess in their living space, the amount of data they may store on a computer network, and the type of electronic storage devices they may use. In lieu of answering, Defendants jointly moved to dismiss the Complaints under Federal Rule of Civil Procedure 12(b)(6). The motions were referred to the undersigned United States Magistrate Judge for the issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Given that the motions and corresponding memoranda are the same in both cases, the Court will address the motions simultaneously. For the reasons set forth below, the Court recommends that Defendants' motions to dismiss be granted.

## I.     FACTUAL ALLEGATIONS IN THE COMPLAINTS

Defendant Cal Ludeman is the Commissioner of the Minnesota Department of Human Services, which is the agency responsible for operating MSOP. (Compls. at 3 ¶ 4(b).)[1] Defendant Dennis Benson is the Chief Executive Officer of MSOP. (*Id.* at 3 ¶ 4(c).) Defendant Gregg Carlson is the Director of MSOP. (*Id.* at 4 ¶ 4(e).) Defendant Daniel Storkamp is the Deputy Director of MSOP. (*Id.* at 4 ¶ 4(f).) Defendant Kevin Moser is the Assistant Director of MSOP. (*Id.* at 3 ¶ 4(d).) Defendants Raymond Ruotsalainen and Steven Lindeen are information technology specialists at MSOP. (*Id.* at 4 ¶ 4(g), (h).) Defendant Mehrada Shabestari is the information technology supervisor at MSOP. (*Id.* at 4 ¶ 4(i).) All Defendants are sued in their official and individual capacities.

### A.     The Personal Property Policy

After Benson became the Chief Executive Officer of MSOP in 2008, a personal property policy was enacted requiring that each patient's personal property fit into three fourteen-gallon footlockers. (Compls. at 4 ¶ 1.) The restriction pertained to all personal property, including legal materials, treatment information, clothing, and shoes. (*Id.* at 4 ¶ 2.) Any items that exceeded the capacity of the lockers were confiscated and removed from the facility. (*Id.*) In addition, Plaintiffs allege that in June 2008, Defendants required them to place numbers on all personal items, disallowed televisions with screens larger than thirteen inches, reduced property storage to a single two-foot by two-foot container, and discontinued cold storage. (*Id.* at 5 ¶ 3.)

---

[1]     Instead of consecutively numbering all paragraphs of the Complaints, Plaintiffs numbered each section separately. Therefore, the Court will use page and paragraph numbers for citations to the Complaints.

Plaintiffs further allege they are prohibited from possessing the following items: jewelry, money, art supplies, cologne, aftershave, phone directories, large belt buckles, spiral notebooks, paper clips, binders, electric toothbrushes, credit cards, birth certificates, drivers licenses, and checkbooks. (*Id.* at 5 ¶ 4.)

### B.   The Computer Network and Information Technology Policies

When Plaintiffs filed their Complaints on August 26 and October 14, 2010, they anticipated that a policy would be enacted on October 20, 2010, requiring them to transfer all electronic data from floppy disks and CD-ROMs to a computer network installed at MSOP. (*Id.* at 7 ¶ 9.) If the data was not properly uploaded, or if the detainee did not designate a recipient for the disks or CD-ROMs, Plaintiffs believed the storage media would be destroyed. (*Id.*)

Plaintiffs also challenge the prospective policy's limitation on each detainee to only 300 megabytes of storage space on the network, which they equate to approximately 208 floppy disks. (*Id.*) They further oppose a limitation on their ability to print only legal, therapeutic, educational, and treatment documents, asserting they should also be able to print letters to their family and friends. (*Id.* at 7 ¶ 8.) Finally, they submit that the information technology staff "will have unfettered access" to materials stored on the network. (*Id.* at 7 ¶ 10.) Even now, when they log on to the network, Plaintiffs are advised that "[a]ny activity on this system may be monitored or access[ed] by the State of Minnesota or other authorized officials at any time. This includes any Data created or stored using this system. Any identifuied [sic] evidence of possible criminal activity will be provided to appropriaite [sic] Law Enforcement agencies." (*Id.*)

## II. LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must accept the alleged facts as true and make all reasonable inferences in Plaintiffs' favor. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that are "merely consistent with" liability are insufficient to create facial plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. DISCUSSION

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). Thus, to properly plead a § 1983 claim, a plaintiff must identify a violation of a constitutional right or other federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). The plaintiff must also allege that the "deprivation was committed by a person acting under color of state law." *Id.*

Here, Plaintiffs have alleged violations of their First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Before the Court proceeds to a substantive discussion of those claims, there are a few comprehensive topics to discuss.

### A.     Official Capacity Claims

Plaintiffs have sued Defendants in both their official and individual capacities. The Eleventh Amendment immunizes state officials acting in their official capacities from liability for damages under § 1983. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 743 (8th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). But the Eleventh Amendment does not bar claims for prospective equitable relief against state employees acting in their official capacities, nor does it bar claims for damages against state employees acting in their individual capacities. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). Accordingly, the Court recommends only that claims for monetary damages against Defendants in their official capacities be dismissed, based on the Eleventh Amendment.

### B.     No Allegations of Each Defendant's Personal Involvement

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the United States Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Thus, Plaintiffs must plead facts showing each named defendant's personal involvement in the alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). A failure to do so is a failure to state a claim against that defendant. *Id.*

Plaintiffs do not allege any specific acts or omissions by Defendants Carlson, Storkamp, Moser, Ruotsalainen, Lindeen, or Shabestari. Accordingly, all claims against these Defendants should be dismissed. With respect to Defendant Benson, Plaintiffs allege generally that the personal property and computer network policies were enacted after he became Chief Executive Officer of MSOP, but they do not allege that he created, enacted, or enforced the policies. The timing of his appointment alone does not demonstrate his personal involvement. Furthermore, a

government official may not be held liable for unconstitutional acts under the doctrine of respondeat superior. *Iqbal*, 129 S. Ct. at 1948. Thus, even assuming Plaintiffs had adequately pled claims against Benson's subordinates, liability would not extend to Benson. In consequence, all claims against Benson should be dismissed.

Defendant Ludeman is the only defendant against whom Plaintiffs make a specific allegation. Plaintiffs specifically allege that Ludeman conducted unannounced inspections of their electronic storage devices but never found any contraband or pornography. Plaintiffs do not claim that this conduct violated any constitutional or other federal right, but that the unannounced inspections showed their responsible use of the storage devices. To the extent that Ludeman's conduct could be considered an illegal search and seizure, the Court will address it in Part III.E *infra*. All other claims against Ludeman should be dismissed.

    **C.**    **Qualified Immunity**

Defendants assert they are entitled to qualified immunity from liability for all of Plaintiffs' claims. The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether the doctrine applies, the Court must answer two questions: (1) Was a constitutional right violated? and (2) Was the right so clearly established at the time so that a reasonable official in similar circumstances would know that his conduct violated the Constitution? *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006). The Court may answer either question first, depending on the facts of the case. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

7

Here, Plaintiffs have alleged claims for both monetary damages and injunctive relief. As qualified immunity does not apply to claims for injunctive relief, those claims may be dismissed only on the merits. Thus, under the facts of this case, it makes sense to determine first whether any constitutional rights were violated.

### D. First Amendment

#### 1. Right of Access to the Courts

Plaintiffs assert that MSOP's policies limiting the amount of data they may store on the computer network and the amount of personal items they may retain in the foot lockers impede their right to access the courts under the First Amendment. "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). To state a claim for relief, a plaintiff must allege that he or she suffered an actual injury caused by the limited access, such as the inability to file a complaint or the dismissal of a claim. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). The actual injury requirement is an element of standing. *Lewis*, 518 U.S. at 349.

In the case at hand, Plaintiffs have not alleged that the limitations on computer storage space or personal property resulted in any actual harm or injury. They have not identified any situations, for example, in which they were prevented from filing a pleading, received an adverse ruling, or were otherwise prevented from pursuing a claim. Consequently, their First Amendment right-to-access claim should be dismissed.

Although not alleged in the Complaints, Plaintiffs argue in their opposition memoranda that Defendants' actions have also impeded their ability to confer with one another and share information. This derivative argument also fails for lack of an actual injury. Further, Plaintiffs have not alleged any restrictions on their ability to confer and share information in other ways, such as verbally or in writing.

### 2. Freedom of Speech

Plaintiffs next assert that Defendants infringed their freedom of speech by confiscating their computer disks and CD-ROMs; by limiting the amount of personal property in their cells; by limiting their printing capabilities to legal, therapeutic, educational, and treatment materials; and by limiting each detainee to 300 megabytes of network storage.

The right to free speech includes "the right to utter or to print, . . . the right to distribute, the right to receive, the right to read," and the freedom of inquiry and thought. *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965). Although detainees retain their right to freedom of speech under the First Amendment, the right may be restricted. *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).

Plaintiffs apparently believe they have a constitutional right to store electronic information in a particular medium and in an unlimited amount, but the protections of the First Amendment do not extend this far. *See Ivey v. Mooney*, Civ. No. 05-1215 (JMR/AJB), 2006 WL 618110, at *2, 6 (D. Minn. Mar. 9, 2006) (where MSOP detainee challenged policy preventing him from scanning and storing documents on his personal computer, finding no First Amendment violation and dismissing claim). Furthermore, restrictions on computer privileges have been described as "*de minimis* restrictions 'with which the Constitution is not concerned.'"

9

*Senty-Haugen v. Goodno*, 462 F.3d 876, 886 n.7 (8th Cir. 2006) (quoting *Bell*, 441 U.S. at 539 n.20). The Eighth Circuit has opined that a civil detainee has no constitutional right, under the First Amendment or otherwise, to use a computer at all. *Fogle v. Blake*, 227 F. App'x 542, 542 (8th Cir. 2007) (unpublished). If detainees are have no constitutional right to computers or to computer privileges, then they have no constitutional right to a certain type or amount of computer storage or to a computer printer.

Furthermore, Plaintiffs were given notice and an opportunity to transfer their electronic data to the computer network. They have not alleged they were unable to save their materials to the network, that their materials exceeded the amount of storage allotted, or that any electronic information was actually confiscated or destroyed.

With respect to the personal property policy, Plaintiffs allege they were forced to send out televisions, DVD players, personal linens, blankets, sheets, towels, washcloths, and extra clothes. But Plaintiffs were permitted to choose which personal items to retain in their storage lockers and which to relinquish, and they do not allege they were required to send out any items containing protected speech. Accordingly, Plaintiffs have not pled a plausible First Amendment claim with respect to the personal property policy.

### 3. Right to Privacy

Plaintiffs' final First Amendment claim is that Defendants' ability to access their legal work product on the computer network contravenes their right to privacy. When a detainee logs on to the MSOP computer network, he is advised that any activity on the system may be monitored by a state or other authorized official. Fatal to Plaintiffs' claim is the absence of any allegation that Defendants actually viewed any legal work product on the network. In fact,

Plaintiffs do not even allege they have created or saved legal work product on the network. They certainly are not required to do so; they have the option of keeping printed materials in their cells and handwriting documents.

In addition, when an institution gives advance notice to detainees that their activity may be monitored or accessed, there is no unconstitutional deprivation of privacy. *See United States v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002) (addressing under the Fourth Amendment the privacy rights of pretrial detainees whose telephone calls were randomly monitored and concluding that no constitutional violation occurred because the facility provided advance notice that activity may be monitored). Here, Plaintiffs concede in their Complaints that they are warned when they first log on to the network that MSOP officials may monitor or access any system activity at any time.

### E. Fourth Amendment

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Involuntarily committed civil detainees have a Fourth Amendment right to be free from unreasonable seizures similar to that of pretrial detainees. *Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009). While pretrial detainees retain "some Fourth Amendment rights upon commitment to a corrections facility," a search of a detainee's personal items in his cell does not violate the Fourth Amendment. *Bell*, 441 U.S. at 557-558; *see also Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984) (holding that prisoners have no legitimate expectation of privacy in their prison cells). Another court in this District recently determined that random room searches at MSOP do not violate the Fourth Amendment, granting the defendants' motion to dismiss on that basis. *Semler v. Ludeman*, Civ. No. 09-0732 (ADM/SRN), 2010 WL 145275, at *21 (D. Minn.

Jan. 8, 2010). Similarly here, Plaintiffs' Fourth Amendment claim against all Defendants, including Defendant Ludeman, should be dismissed.

### F.     Fifth Amendment

Plaintiffs allege that Defendants violated the Fifth Amendment in two ways: depriving them of due process and taking property without just compensation. With respect to due process, this claim fails because the Fifth Amendment applies only to federal action. *See Barnes v. City of Omaha*, 574 F.3d 1003, 1006 n.2 (8th Cir. 2009). None of the Defendants are federal officials, and Plaintiffs have not alleged any action by the federal government.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Plaintiffs contend they have not been compensated for the personal property they had to send out of the facility. This claim fails for several reasons. First, Plaintiffs have failed to plead sufficient facts specifying what items each Plaintiff was forced to relinquish and which Defendant was responsible. Second, assuming Plaintiffs actually sent out any property, they were allowed to designate a recipient for it, thereby retaining control over the it. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (where prison officials seized an inmate's personal possessions and sent them to an address provided by the inmate, finding that "[a]lthough plaintiff no longer has possession of the property, he still retains control over it and, therefore, has not been 'deprived' of the property"). Third, and finally, there is no allegation supporting a factual inference that Plaintiffs' property was taken for public use.

G.   **Sixth Amendment**

Plaintiffs contend their Sixth Amendment right of access to the courts was violated through limitations on personal property and legal materials. As stated above, however, Plaintiffs have not alleged an actual injury, which is required to state a viable claim for interference with access to the courts. Further, by its terms, the Sixth Amendment applies to "criminal prosecutions," U.S. Const. amend. VI, and Plaintiffs have not alleged any ongoing criminal prosecutions in which they are accused.

H.   **Procedural Due Process**

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The threshold question in assessing Plaintiffs' procedural due process claim is whether they were deprived of a protected liberty or property interest. *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 445-46 (8th Cir. 1995). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). A property interest may arise from "'existing rules or understandings that stem from an independent source such as state law.'" *Skeets v. Johnson*, 816 F.2d 1213, 1214 (8th Cir. 1987) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

"No federal, state or local statute creates a property right for Plaintiffs to possess computers and electronics, electric toothbrushes, electric fans, or unlimited amounts of personal property and clothing." *Semler*, 2010 WL 145275, at *24 (citing *State ex rel. Anstey v. Davis*, 509 S.E.2d 579, 586 (W. Va. 1998)); *see also Beaulieu v. Ludeman*, Civ. No. 07-1535

(JMR/JSM), 2008 WL 2498241, at *16-17 (D. Minn. June 18, 2008) (no protected property or liberty interest in having a 20-inch television); *Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994) (no constitutional right to computer memory capacity); *Spicer v. Richards*, No. C07-5109 FDB, 2008 WL 3540182, at *7-8 (W.D. Wash. Aug. 11, 2008) (no due process right to possess a computer, cell phone, pager, scanner, or printer); *Carmony v. County of Sacramento*, No. CIV S-05-1679 LKK GGH P, 2008 WL 435343, at *18 (E.D. Cal. Feb. 14, 2008) (no First Amendment right to computer or internet access). This Court likewise concludes that Plaintiffs have no protected liberty or property interest in possessing personal items in excess of that which fits into three footlockers, in a specific amount of computer storage capacity, or in the ability to store electronic data on external devices.

Moreover, even if Plaintiffs had alleged a protected liberty or property interest, there is an available and adequate state post-deprivation remedy. Minnesota Stat. § 246B.03, subd. 3, establishes a grievance procedure for civilly committed sex offenders to resolve their concerns and complaints. In addition, the Minnesota Tort Claims Act, Minn. Stat. § 3.736, also provides a recourse for conversion by state employees. Where such meaningful remedies exist, neither negligent nor intentional deprivations of property violate due process. *Hudson*, 468 U.S. at 533.

### I. Substantive Due Process

To state a substantive due process claim, Plaintiffs must allege "that a fundamental right was violated[] and that the conduct shocks the conscience." *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (citation omitted). "Whether the alleged conduct shocks the conscience is a question of law." *Id.* (citation omitted). Only conduct that may be described as egregious or

outrageous "rises to the level of a substantive due process violation." *Burton v. Richmond*, 370 F.3d 723, 729 (8th Cir. 2004) (citation omitted).

As discussed in Part III.H *supra*, Plaintiffs have no fundamental right to possess personal property in excess of that which fits into three footlockers, to utilize a specific amount of computer storage capacity, or to store electronic data on external devices. As such, their substantive due process claim cannot stand. Nor have Plaintiffs alleged any conduct that shocks the conscience. The adoption and implementation of the personal property and computer network policies were not egregious or outrageous.

### IV.   RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss the Complaint in Civil No. 10-3759 (Doc. No. 9) be **GRANTED**;

2. Defendants' Motion to Dismiss the Complaint in Civil No. 10-4236 (Doc. No. 7) be **GRANTED**;

3. The Complaint in Civil No. 10-3759 be **DISMISSED WITH PREJUDICE**;

4. The Complaint in Civil No. 10-4236 be **DISMISSED WITH PREJUDICE**; and

5. **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: June 6, 2011                              s/ *Jeanne J. Graham*

                                               JEANNE J. GRAHAM
                                               United States Magistrate Judge

## NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **June 22, 2011**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.